## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

**FILED**

APR  8 2003

LARRY W. PROPES, CLERK
COLUMBIA, S.C.

| | |
|---|---|
| Paul K. Valdez | ) |
| *Enter the full name of the plaintiff in this action* | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| Captain Cliff McElvogue | ) |
| | ) |
| Sheriff Wayne DeWitt | ) |
| | ) |
| Sargent Tony Riley | ) |
| | ) |
| Doctor Marcus Shaefer | ) |
| | ) |
| Nurse Paula Brodie | ) |
| *Enter above the full name of defendant(s) in this action* | ) |

**COMPLAINT**

Civil Action No. 8:03-1118-DBT
*(to be assigned by Clerk)*

## I.  PREVIOUS LAWSUITS

A.  Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise related to your imprisonment?  Yes_____    No  X

B.  If your answer to A is Yes, describe the lawsuit in the space below.  If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.

   1.  Parties to this previous lawsuit:

       Plaintiff:_____

       Defendant(s):_____

   2.  Court:_____
              *(If federal court, name the district; if state, name the county)*

   3.  Docket Number:_____

   4.  Name of Judge to whom case was assigned:_____

   5.  Disposition:_____
              *(For example, was the case dismissed?  Appealed?  Pending?)*

   6.  Approximate date of filing lawsuit:_____

   7.  Approximate date of disposition:_____



1

## II. - PLACE OF PRESENT CONFINEMENT

A. Name of Prison/Jail/Institution: Berkeley County Detention Center

B. What are the issues that you are attempting to litigate in the above-captioned case?

Medical neglect, improper segragated confinement, Prdjudice

C. (1) Is there a prisoner grievance procedure in this institution?    Yes X    No_____

(2) Did you file a grievance concerning the claims you are raising in this matter? Yes  x   No_____

When Different times   Grievance Number (if available) N/A

D. Have you received a final agency/departmental/institutional answer or determination concerning this matter (i.e., your grievance)? Yes_____    No_____

E. When was the final agency/departmental/institutional answer or determination received by you?_____

*If possible, please attach a copy of your grievance and a copy of the highest level decision concerning your grievance that you have received.*

F. If there is no prison grievance procedure in this institution, did you complain to prison, jail, or institutional authorities?    Yes_____    No_____

G. If your answer is YES:

1. What steps did you take?_____

2. What was the result?_____

## III. PARTIES

*In Item A below, place your name, inmate number, and address in the space provided. Do the same for additional plaintiffs, if any.*

A. Name of Plaintiff: Paul K. Valdez          Inmate No.:_____

Address: 300 California Avenue Moncks Corner, SC 29461

*In Item B below, place the full name of the defendant, his official position, and place of employment in the space provided. Use Item C for additional defendants, if any.*

B. Name of Defendant: Wayne DeWitt          Position: Sheriff

Place of Employment Berkeley County Sheriff's Office

C. Additional Defendants (*provide the same information for each defendant as listed in Item B above*):
Captain Cliff McElvogue   Berkeley County Detention Center
Sgt. Tony Riley           Berkeley County Detention Center
Dr. Marcus Shaefer        Berkeley County Detention Center

Nurse Paula Brodie        Berkeley County Detention Center

## STATEMENT OF CLAIM

I have been denied psychiatriac care upon my incarceration in
September of 2001 at Berkeley County Detentio  Center 300 California
Avenue Moncks Corner, SC 29461. Prior to this time I was under the care
of a clinical psychiatrist. Part of the treatment I was receiving
included prescribed medication. This medication was withheld by the
Berkeley County Detention Center upon my incarceration. I soon started
experiencing symphoms of Klonopin withdrawl psychosis. I was hearing
voices, having visual hallucinations became delusional and psychotic. I
continued to have these symphoms for approximately two (2) months.
I agreeded to be put on protective custody for a period of seventy two
(72) hours. A Sgt. Tony Riley of BCDC had me sign a form stating this.
Due to me experiencing these symphoms while in protective custody,
I requested to be interviewed by the BCDC nurse, Paula Brodie. Upon
hearing about my symphoms, nurse Brodie then arranged for me to be
seen by the BCDC doctor, Marcus Shaefer. Upon seeing Dr. Shaefer I
explained to him of my clinical diagnosis condition and my current
symphoms. I then informed him of the medication I was prescribed by
my psychiatrist, and which doctors and institutions had my medical records.
I then signed release forms so that Dr. Shaefer could obtain these
medical records. Dr. Shaefer then told me that what I was experiencing
was normal for my adjusting to my new confinement, and denied me my
prescribed medication except my anti-depresant. While I was still
present, nurse Brodie commented to Dr. Shaefer that I was a drug
abuser, and that I had killed my mother. She then stated that this was
the reason for my claiming to suffer from mental illness. This was a very
harsh and untrue statement, due to the facts that my medical records
document a twelve (12) year mental illness history and that I am
considered to be disabled by this illness by the South Carolina
Department of Voca onal Rehabilitation and the Social Security
Administration. I was returned to BCDC A-pod lock down under protective
custody contin ing to suffer the above mentioned symphoms. I occasionally
had cell mates that if contacted can confirm my condition at that time.
On one occasion I had two (2) cell mates, one whose name was Peter Prilesu,
and the other I only knew as "Q". These two (2) inmates severly beat
me causing injury to me of two (2) fractured ribs and a concussion.
When two (2) correctional officers, a corporal Arnet and private
Dumas finally responded to my cries for help, corporal Arnet decided
that if I was still lying on the floor of cell A-9 when he returned for
the 1:30 AM count, he would then remove me from that cell and place me
in another one. As a result of me remaining in cell A-9 the same two (2)
inmates continued to beat me by stomping on me and beating on my head
with their shoes. Later I was removed from cell A-9 and placed in
cell A-4. I remained in cell a_4 while I recouperated from the injuries
I received from the beating of the two (2) inmates while in cell A-9.
The only treatment I received from Dr. Shaefer during my recovery
was when he was brought to cell A-4 to examine me. Due to myconcussion,
I can only remember Dr. Shaefer holding open my eyelids and shining a
flashlight in my eyes. I finally recovered in mid November 2001.

At this time I seemed to no longer be suffering from the previous hallucinations. At this point in time Sgt. Riley had me returned to B-pod general population. I then sent a request to Dr. Shaefer, nurse Brodie, and Sgt. Riley asking what forms of medical treatment or care I received during the two (2) weeks after the assault upon me by the two (2) inmates. I also inquired as to what if any charges would be filed against these two (2) inmates who had lynched me. I received no reply from anyone in BCDC administration. I feel this was due to the neglect of medical treatment and my psychotic symphtoms. Three (3) BCDC correctional officers, a Pvt. Sheetz, Pvt. Vaughn, and Mrs. Collins mentioned the attack upon me and F . "crazy" I had seemed to be during those two (2) months in A-pod protective custody.

I believe the fore mentioned and the following events describe some violations of my rights or laws concearning the care and treatment of inmates. Exactly which laws, policies or procedures have been violated, I am not sure. Therefor . Iask the court to decide. As of the date of this complaint I have continued to be denied psychiatriac care and necessary medical tests to regulate my thyroid condition by this facility.

During my next ten (10) month stay in B-pod general population, I experienced regular periods of insomnia along with audio hallucinations which seemed to to occur in direct relation to my sleep deprevation. On several occassions I related this to nurse Brodie, who stated to me that I was in jail and not the Holiday Inn and refused to refer me to see some one from Mental Health, which I also requested. Also during my stay in B-pod general population, another inmate who was also charged with capital murder was reccieving medication for his mental condition. The name of this medication was Resperdol. I then became concearned if this medication would help my present symphtoms. Due to stress and poor judgement I traded canteen items with Mr. Audie Brabham for his medication. Both of us were caught in this transaction and sent to A-pod for disiplinary punishment. This was my first such offense and Mr. Brabham's second. Mr. Brabham remained in A-pod lock down for two (2) weeks and I remained for thirty six (36) days. I was then returned to B-pod general population. I was then returned to A-pod lock down five (5) days later no explanation. I inquired as to the reason of my being locked down again and how long I would have to remain. Approximately two (2) weeks later Sgt. Riley came to see me in A-pod lock down and informed me that I would remain in lock down indefinitely due to my violation concearning Mr. Brabham's medication. I then sent requests to Sgt. Riley requesting a better explination of the reason of my lock down in A-pod. I stated that this type of confinement was violating my right to due process. Sgt. Riley then stated to me that I was on lock down in A-pod by order of nurse Brodie to make sure that I was taking my medication and not for any disiplinary reason. This aroused my suspicion because approximately two (2) weeks prior I had a meeting with a Cpt. Cliff McElvogue. This meeting concearned a telephone call he recieved from my father's attorney requesting psychiatriac care for me. Cpt. McElvogue stated to me that if I continued to pursue this intrvention from the

attorney on my behalf that he would put me in A-pod lock down and throw away the key. As far as I am concearned, this is exactly what happened but supposedly by the order of nurse Brodie who seems to have much contempt towards me. Due to the afore mentioned reasons, I decided to pursue a legal resolution for my complaints. Iwas soon to realize that being on lock down severly restricted my access to writing materials such as pens, pencils, legal pads, and stamped envelopes. These are all considered contraband while on lock down in A-pod. I proceeded to ask my father to send me legal books that a lawyer stated I had the right to have These books would aid and assist in the preperation of my defense. I recieved a book called with a soft cover named Black's Law Dictionary which was quickly confiscated by Sgt. Riley as contraband. I then asked if I could have access to a law library, but again I was denied. My incoming legal mail is being opened and read by the staff before I recieve it. My outgoing legal mail has also been opened and read and then resealed prior to mailing. I believe that the administration here at BCDC is intentionally trying to block my access to the court and hinder my efforts to obtain information that would help me prepare and defend myself in court. I believe these are violations of my Constitutional rights. I further feel that I am being discrimninated against by Dr. Shaefer, nurse Brodie, and the administration of BCDC due to the nature of my charges and the idenity of my alleged victim. My being overweight, gender, and mental condition. To support this claim, I sight the following Facts:     Cpt. McElvogue called me a fat sweat hog and would take my mattress, clothes, blanket, toilet paper, Bible, (the only book they allow here) and turn the water off on my toilet if I make anymore complaints. This also was witnessed by my then cell mate, a Robert Lee. The staff at BCDC often take away these items it seems to inflict a more severe punishment then just being put on lock down. I believe this is a violation of the standard at which inmates should be kept. Again, Audie Brabham was returned to A-pod lock down for his third (3rd) offense of selling or trading his medication. He was then returned to B=pod general population after three (3) weeks. Evidently being locked down in A-pod at BCDC is not a punishment that is required equally to all inmates with the same violation, even when repeated three (3) times. This is blatetenly unfair and improper.

The female pre-trial detainees here at BCDC recieve the same privilages as the trustees. The male pre-trial detainees do not. This I believe is discrimination based on gender. If it is indeed true that I was being kept in A-pod lock down for medical and not disi^linary reasons, then I should of recieved the same privilages as al  the other general r pulation pre-trial detainees regardless of .      r also.

I request the court to order the Berkeley County Sheriff and the administration at Berkeley County Detention Center to:
   1.) Return me to B-pod general population.
   2.) Provide me with the same privilages of all other pre-trial
       detainees regardless of gender.
   3.) Provide me with proper psychiatric care and medical tests
       and treatment necessary to regulate my thyroid condition.

4.) Allow me to posess writing materials to include black ink pens needed by me to prepare documents for submission to the courts for my defense.

5.) Allow me to recieve legal books such as Black's Law Dictionary and the Prisoners Litigation Handbook.

6.) Access to a law library.

7.) To discontinue the practice of "striping out" an inmates cell of his matress, blanket, clothes, and Bible.

8.) No longer shut off the cell's water so an inmate can not flush his toilet.

9.) No longer withhold the necessary showering for proper hygene as a disiplinary tool.

10.) Provide reimbursem ⋅ t of any medical expenses for psychiatriac care by a private psychiatrist at the BCDC to include the cost of prescribed medications while I am in the custody of the Berkeley County Detention Center.

11.) To pay lawyer fees and all fees in preparing these documents and all other costs in bringing this court action.

12.) Monetary damages in equivilent to one hundred and fifty dollars ($150.00) a day for every day since my arrest that I had to endure needless pain and suffering from psychotict symphoms due to medical neglect and refusal to provide psychiatriac care by the staff at Berkeley County Detention Center.

13.) Monetary damage equivilent to one hundred and fifty dollars ($150.00) a day for every day that I have been confined in segragation with no privligaes with out valid disiplinary or medical cause..

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Signed this _7th_ day of _April_ 2003

_Paul  K.  Valdez_
Signature of plaintiff